UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| WILLIAM LINDALA, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>   v.<br><br>ATLANTIC CREDIT AND FINANCE INC. and MIDLAND FUNDING LLC,<br><br>      Defendant. | Case No.: 19-cv-1450<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff William Lindala is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Defendant Atlantic Credit & Finance Inc. ("Atlantic") is a debt collection agency with its principal offices located at 111 Franklin Road, SE, Suite 400, Roanoke, VA 24011.

6. Atlantic is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Atlantic is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. Atlantic is a "debt collector" as defined in 15 U.S.C. § 1692a.

9. Defendant Midland Funding, LLC ("Midland Funding") is a limited liability company with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

10. Midland Funding is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time it acquires them.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App.

LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *Torres v. LVNV Funding LLC*. 2018 U.S. Dist. LEXIS 49885, at *13-15 (N.D. Ill Mar. 27, 2018); *Hordgev. First Nat'l Collection Bureau, Inc.*, 2018 U.S. Dist. LEXIS 132435, at *12-13 (S.D. Tex. Aug. 7, 2018); *Meola v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 139101, at *13-18 (E.D.N.Y. Aug. 15, 2018).

13. The primary purpose of Midland Funding's business, and Midland Funding's principal purpose, is the collection of consumer debts.

14. Midland Funding's website contains an "FAQ" webpage, which states:

**Who is Midland Funding?**

Midland Funding LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland Funding LLC purchases accounts with an unpaid balance when:

- An account has gone at least 180 days without making a payment, or
- Someone paid less than the minimum monthly payment for at least 180 days, and
- The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

15. Midland Funding is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for Midland Funding's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

16. According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Midland paid less than 10 cents on the

dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

17. Midland Funding's role generally is to purchase and receive assignment of consumer debts that are in default at the time Midland Funding acquires them. Directly and indirectly through its affiliates, including Encore and MCM, Midland Funding uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts. The primary purpose of debt buyers like Midland Funding is debt collection. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

18. Midland Funding uses debt collectors, including MCM, to collect allegedly defaulted debts that have been assigned to Midland Funding. Midland Funding uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

19. Midland Funding by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that Midland Funding filed almost 1,000 small claims lawsuits against Wisconsin consumers in the month of January 2019 alone. Upon information and belief, all or almost all of these small claims actions are proceedings to collect consumer debts from Wisconsin residents.

4

20. Upon information and belief, when Midland Funding obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

21. Midland Funding is a "debt collector" as defined in 15 U.S.C. § 1692a.

22. A company meeting the definition of a "debt collector" under the FDCPA (here, Midland Funding) is liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (citing *Pollice*, 225 F.3d at 404-05).

## FACTS

23. On or about October 23, 2018, Atlantic mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "MIDLAND FUNDING, LLC" and originally owed to "CITBANK N.A." A copy of this letter is attached to this complaint as Exhibit A.

24. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, used only for personal, family, or household purposes.

25. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

26. Upon information and belief, Exhibit A was the first written communication Plaintiff received from Atlantic regarding the alleged debt referenced in Exhibit A.

27. Exhibit A contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors to provide along with their initial communications:

5

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

28. On or about November 5, 2018, Atlantic mailed another debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this complaint as Exhibit B.

29. Upon information and belief, Exhibit B is a form letter, generated by computer, with the information specific to Plaintiff inserted by computer.

30. Upon information and belief, Exhibit B is a form debt collection letter, used by Atlantic to attempt to collect alleged debts.

31. Exhibit B contains the following text:

> For disputes call 800-888-9419 or write to: PO BOX 13386 Roanoke, VA 24033-3386

32. Exhibit B is deceptive, misleading, and confusing to the unsophisticated consumer.

33. The instruction in Exhibit B that the consumer may "Call 1-800-772-1413," is false, deceptive, misleading, and confusing to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice stated in Exhibit A, and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347-48 (7th Cir. 2018) (oral disputes do not entitle consumers to verification rights, including "the ultimate power vis-à-vis debt collectors: the power to demand cessation of all collection activities"); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 759 (6th Cir. 2018) ("*Macy II*") ("Including a materially false, deceptive, or misleading statement in a debt-collection communication may cause an individual

6

'to lose the very … rights that the law affords him.'"); *Macy v. GC Servs. Ltd. P'ship.*, Civil Action No. 3:15-cv-819-DJH, 2016 U.S. Dist. LEXIS 134421 *14-15 (W.D. Ky. Sep. 29, 2016) ("*Macy I*"); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-45 (E.D. Va. 2011).

34. 15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

35. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see Macy II*, 897 F.3d at 757-58:

GC's letters present a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letters provide misleading information about the manner in which the consumer can exercise the consumer's statutory right to obtain verification of the debt or information regarding the original creditor. In responding to a debt-collection notice, an oral inquiry or dispute of a debt's validity has different legal consequences than a written one. ... If a consumer contests a debt by telephone rather than in writing, the consumer loses most of the protections for debtors set forth in Section 1692g; the debt-collection agency is under no obligation to verify the debt and to cease all collection efforts as required by §1692g(b).

*See also Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (noting that Section 1692g "assigns lesser rights to debtors who orally dispute a debt and greater rights to

debtors who dispute it in writing"); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("Debtors can protect certain basic rights through an oral dispute, but can trigger a broader set of rights by disputing a debt in writing."); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

36. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> **Disputed debts**
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

37. Congress adopted a specific FDCPA dispute procedure in 15 U.S.C. § 1692g "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n.6 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

8

38. <u>Exhibit B</u> confusingly and misleadingly directs the consumer to notify Atlantic about disputes without informing the consumer that oral disputes do not trigger verification.

39. Courts throughout the country have found that a debt collector overshadows the consumer's statutory validation rights by directing them to dispute their debts by telephone. *See Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482 (4th Cir. 1991) (holding the inclusion of the statement "PHONE US TODAY" in an initial collection letter to overshadow the validation notice."); *Caprio*, 709 F.3d at 152 (3d Cir. 2013) (reversing dismissal of the plaintiff's overshadowing claims, because the letter at issue "can be reasonably read to have two or more different meanings, one of which is inaccurate, i.e., that [the plaintiff] could dispute the debt by making a telephone call."); *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417 (7th Cir. 2005); *Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87 (3d Cir. 2017) (unpublished) (holding the inclusion of the statement "SHOULD THERE BE ANY DISCREPANCY PLEASE CALL TOLL FREE" in a collection letter sent within the 30-day validation period overshadows the validation notice); *Seplak by Seplak v. IMBS, Inc.*, 1999 U.S. Dist. LEXIS 2106, 1999 WL 104730 (N.D Ill. February 23, 1999); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, 1997 WL 136313 (N.D. Ill. March 13, 1997); *Stebbins v. Allied Account Servs.*, 1991 U.S. Dist. LEXIS 21778, *7 (D. Conn. September 9, 1991); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. 1990); *Gaetano v. Payco of Wisconsin*, 774 F. Supp. 1404, 1411-12 (D. Conn. 1990); *Garrett v. Credit Bureau of Carbon County d/b/a Collection Center, Inc.*, 2018 Colo. App. LEXIS 1447 (Col. Ct. App. Oct. 18, 2018); *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under

subsections(a)(4) and (a)(5) must be made in writing."); *McCabe*, 272 F. Supp. 2d at 743-44 (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking*, 783 F. Supp. 2d at 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F. Supp. 2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

40. Atlantic's instruction in Exhibit B that the consumer may communicate disputes by telephone rather than in writing contradict and overshadow the validation notice.

41. The instruction that the consumer may communicate her dispute by telephone would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled. *See Camacho*, 430 F.3d at 1082.

10

Case 2:19-cv-01450-LA    Filed 10/03/19    Page 10 of 20    Document 1

42. Furthermore, the overshadowing effect is compounded in a "follow-up" letter because <u>Exhibit B</u> does not reference the debtor's validation rights or explain the effect of disputing the debt orally or in writing. *Beaufrand v. Portfolio Recovery Assocs., LLC*, No. 18-CV-214, 2018 U.S. Dist. LEXIS 197339 *14-15 (E.D. Wis. Nov. 20, 2018); *Velazquez v. Fair Collections & Outsourcing, Inc.*, 2013 U.S. Dist. LEXIS 124895, at *17-22 ("the absence of a reprinted validation notice or reference to the debtor's right to request validation, combined with the specific text of a second letter, can create impermissible overshadowing or contradiction."); *Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87 (3d Cir. 2017) ("Given the substance and form of the second letter, we conclude that it did overshadow and contradict the notice. In fact, the first letter appears to represent the functional equivalent of a validation notice set forth on the reverse side of a single letter. Just as the debt collector in *Caprio* set forth the 'please call' language on the front of the letter and 'relegated' the 'required Validation Notice' to 'the back side of the Collection Letter,' Certified Credit included 'PLEASE CALL' language in a letter mailed ten days before the expiration of the validation period—while 'relegating' the legally mandated validation notice to a letter it had sent to Laniado more than three weeks earlier. Unlike its counterpart in *Caprio* (which included an instruction in all capital letters directing Caprio to see the reverse side for important information), the March 5, 2014 letter did not even mention or otherwise refer to the February 13, 2014 letter. Given the circumstances, it is certainly conceivable that the least sophisticated debtor wishing to dispute the debt could follow the apparent instruction set forth in a mailing received shortly before the deadline and make an ineffective toll-free phone call to do so.") (internal citations omitted); *see also, e.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of

fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

43. Moreover, Exhibit B additionally states:

> Atlantic Credit & Finance has tried to reach you regarding this account. This letter is to inform you that Midland Funding, LLC is considering forwarding this account to an attorney in your state for possible litigation. Upon receipt of this notice, please call 800-888-9419 to discuss your options.
> If we don't hear from you or receive payment, Midland Funding, LLC may proceed with forwarding this account to an attorney.

44. Immediately following such statement, Exhibit B further states:

> Atlantic Credit & Finance would like to make an arrangement with you to resolve the above-referenced account using the following:
>
> - Biweekly payments as low as $25.00, with the first payment due on 11/09/2018; and continuing biweekly until paid.

45. The unsophisticated consumer, reading the above statements, would understand such statements to mean that Midland would indeed forward their account to an attorney to commence litigation against them if they did not remit at least a payment of $25.00 by November 9, 2018.

46. Such a threat to assert legal claim against Plaintiff included in Exhibit B, without reference to the validation notice included in Exhibit A, further contradicts and overshadows such validation notice.

47. The overshadowing effect is further compounded by the fact that the deadline for the first payment, as demanded by payment schedule included in Exhibit B, is November 9, 2018, which is only four days after the date of the letter and well within the 30-day validation period provided by Exhibit A.

48. The demand for payment during the 30-day period is confusing and misleading as to the consumer's rights to dispute the debt or request the name and address of the original creditor. *See, e.g.*, *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997); *Bartlett v.*

12

*Heibl*, 128 F.3d 497 (7th Cir. 1997); *see also, Wolff v. Stellar Recovery, Inc., 2016 U.S. Dist. LEXIS 15208* (N.D. Ill. Feb. 5, 2016).

49. Indeed, upon information and belief, even if <u>Exhibit B</u> had indeed been mailed on November 5, 2018, the date of the letter, Plaintiff would not have received the letter until on or after the purported deadline for the first payment.

50. The overshadowing effect is also exacerbated by the fact that <u>Exhibit B</u> states that Midland Funding, LLC ("Midland"), the creditor of Plaintiff's alleged debt —rather than Atlantic— would forward the account to an attorney. Thus, even a more sophisticated consumer recalling the validation notice would believe that a failure to remit payment by November 9, 2018 would render futile any attempt to dispute or request verification of their debt, as Atlantic would presumably no longer be responsible for the collection of their debt after such date.

51. Plaintiff read <u>Exhibit B</u>.

52. Plaintiff was confused and misled by <u>Exhibit B</u>.

53. The unsophisticated consumer would be confused and misled by <u>Exhibit B</u>.

54. Plaintiff had to spend time and money investigating <u>Exhibit B</u>, and the consequences of any potential responses to <u>Exhibit B</u>.

### ***The FDCPA***

55. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Sols.*, No. 17-cv-1671, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-

13

CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after Spokeo, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc., 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing,

even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

56.  Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

57.  Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain

15

information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

58. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

59. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

60. 15 U.S.C. § 1692f generally prohibits "any unfair or unconscionable means to collect or attempt to collect any debt."

61. 15 U.S.C. § 1692g states:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

(4) a statement that if the consumer notifies the debt collector **in writing** within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

16

> (5) a statement that, upon the consumer's **written request** within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(emphasis added)

62. 15 U.S.C. § 1692g(b) states, in part, that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

63. The Seventh Circuit has held that a debt collector must disclose the debtor's rights to obtain verification in a non-confusing manner, and must ensure its representations to debtors do not contradict the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.").

64. The false statement or implication during the thirty-day validation period that a consumer may effectively communicate her dispute by telephone is a material false statement. *E.g., Flowers*, 1997 U.S. Dist. LEXIS 6070, *7-9.

## COUNT I – FDCPA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. By representing in a follow-up letter, sent within the 30-day FDCPA validation period, that the consumer may effectively communicate their dispute by telephone, <u>Exhibits B</u> contradicts and overshadows the disclosure of the consumer's rights to obtain verification of the debt and the name and address of the original creditor, which were included in Atlantic's previous letter sent to Plaintiffs less than 30 days prior.

17

67. Exhibit B is likewise misleading because the letters imply that a consumer may effectively communicate a dispute by telephone rather than in writing.

68. Defendants thereby violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## COUNT II – FDCPA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. By stating "Midland Funding, LLC is considering forwarding this account to an attorney … for possible litigation" alongside a deadline for payment which falls within the 30-day validation period provided by Exhibit A, Exhibits B contradicts and overshadows such validation notice.

71. Defendants thereby violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, and 1692g(b).

## CLASS ALLEGATIONS

72. Plaintiff brings this action on behalf of two classes.

73. Class I ("Nationwide Class") consists of:

> (a) all natural persons in the state of Wisconsin, (b) to whom Atlantic mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) and to whom Atlantic subsequently, within fewer than thirty days, mailed a collection letter in the form of Exhibit B the Complaint in this Action, (d) where the letters sought to collect the same alleged debt, (e) which was incurred for personal, family, or household services, (f) and where the second letter was mailed between October 3, 2018 and October 3, 2019, inclusive, (g) and neither letter was returned by the postal service.

74. Class II ("Wisconsin Class") consists of:

> (a) all natural persons in the state of Wisconsin, (b) to whom Atlantic mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) and to whom Atlantic subsequently, within fewer than thirty days, mailed a collection letter in the form of Exhibit B the Complaint in this Action, (d) where the letters sought to collect the same alleged debt, (e) which was

18

incurred for personal, family, or household services, (f) and where the second letter was mailed between October 3, 2018 and October 3, 2019, inclusive, (g) and neither letter was returned by the postal service.

75. Each class is so numerous that joinder is impracticable.

76. Upon information and belief, there are more than 50 members of each class.

77. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

78. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

79. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

80. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

81. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 3, 2019

19

Case 2:19-cv-01450-LA    Filed 10/03/19    Page 19 of 20    Document 1

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com